(No. 64476.—)

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. M.A., A Minor, Appellee.

*Opinion filed September 22, 1988.*

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Mark L. Rotert and Terence M. Madsen, Assistant Attorneys General, and Thomas V. Gainer, Jr., Steven J. Zick, and Kenneth T. McCurry, Assistant State's Attorneys, all of Chicago, of counsel), for the People.

Paul P. Biebel, Jr., Public Defender, of Chicago (Alison Edwards, Aaron Meyers and Marijane Placek, Assistant Public Defenders, of counsel), for appellee.

Howard H. Braverman and Dennis Rendleman, of Springfield, and Elizabeth E. Clarke, of the Office of the State Appellate Defender, of Chicago, for *amicus curiae* Illinois State Bar Association.

JUSTICE RYAN delivered the opinion of the court:

The defendant, M.A., a minor, was arrested and charged with the offense of unlawful use of weapons on school grounds. (Ill. Rev. Stat. 1985, ch. 38, par. 24—1(a)(12).) Pursuant to the automatic-transfer provision of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 702—7(6)(a) (now Ill. Rev. Stat. 1987, ch. 37, par. 805—

4(6)(a))), the defendant's case was transferred to criminal court so that he could be prosecuted as an adult. Following a hearing, the trial court held that the automatic-transfer provision of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 702—7(6)(a)) is unconstitutional as applied to the charge of unlawful use of weapons on school grounds (Ill. Rev. Stat. 1985, ch. 38, par. 24—1(a)(12)). Because the statute was declared unconstitutional as applied, this case is here on direct appeal by the State. (See 107 Ill. 2d R. 603.) The Illinois State Bar Association was granted leave to file an *amicus curiae* brief.

The defendant asserts that section 2—7(6)(a) of the Juvenile Court Act is invalid because it deprives him of due process and equal protection of the laws. Section 2—7(6)(a) of the Juvenile Court Act provides:

> "(a) The definition of delinquent minor under Section 2—2 of this Act shall not apply to any minor who at the time of an offense was at least 15 years of age and who is charged with murder, aggravated criminal sexual assault, armed robbery when the armed robbery was committed with a firearm, *or violation of the provisions of subsection 24—1(a)(12) of the Criminal Code of 1961, as amended.* These charges and all other charges arising out of the same incident shall be prosecuted pursuant to the Criminal Code of 1961, as amended." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 37, par. 702—7(6)(a).)

The italicized language was added by an amendment in 1985, adding the offense of unlawful use of weapons on school grounds (Ill. Rev. Stat. 1985, ch. 38, par. 24—1(a)(12)) to those offenses required to be transferred automatically to the jurisdiction of the criminal court. (Pub. Act 84—1075, eff. Dec. 2, 1985.) The statute, Unlawful Use of Weapons (Ill. Rev. Stat. 1985, ch. 38, par. 24—1(a)(12)), provides in relevant part:

> "(a) A person commits the offense of unlawful use of weapons when he knowingly:

(12) Carries or possesses on or about his person any bludgeon, black-jack, sling-shot, sand-club, sand-bag, metal knuckles, switchblade knife, tear gas gun projector bomb or any object containing noxious liquid gas, pistol or revolver or other firearm, bomb, grenade, bottle or other container containing an explosive substance of over one-quarter ounce, or cartridge while in the building or on the grounds of any elementary or secondary school, community college, college or university. ***"

The State raises one issue on appeal: whether the trial court erred in holding that it is unconstitutional for the legislature to provide that 15 and 16 year olds charged with unlawful use of weapons on school grounds shall be automatically transferred to the criminal court for disposition.

The trial court found there was no rational basis for automatically transferring 15 or 16 year olds charged with unlawful use of weapons on school grounds when other 15 or 16 year olds charged with attempted murder or other Class X felonies are entitled to a hearing before the case is transferred. (Ill. Rev. Stat. 1985, ch. 37, par. 702—7(3).) The trial court concluded that to automatically transfer juveniles charged with unlawful use of weapons on school grounds without a hearing violates due process and equal protection.

The defendant claims that the trial court correctly found that the inclusion of unlawful use of weapons on school grounds in the class of crimes excluded from the Juvenile Court Act violates equal protection because other similarly situated defendants fall within the scope of the Juvenile Court Act. Additionally, the defendant urges this court to apply the strict scrutiny standard to juveniles because as a class they are uniquely powerless. In support of this assertion, defendant relies on the fact that minors have no right to vote. (See also Stern, *The Burger Court and the Diminishing Constitutional*

*Rights of Minors: A Brief Overview*, 1985 Ariz. St. L.J. 865, 894.) The defendant asserts that juveniles fall within the definition of a "suspect class" set forth in *San Antonio Independent School District v. Rodriguez* (1973), 411 U.S. 1, 28, 36 L. Ed. 2d 16, 40, 93 S. Ct. 1278, 1294: a class "regulated to such a position of political powerlessness as to command extraordinary protection from the majoritorian political process."

Courts, however, have routinely held that age is not a suspect class for purposes of equal protection analysis, and thus the rational basis standard applies. (See, *e.g., Massachusetts Board of Retirement v. Murgia* (1976), 427 U.S. 307, 49 L. Ed. 2d 520; 96 S. Ct. 2562; *Trafelet v. Thompson* (7th Cir. 1979), 594 F.2d 623; *Shorez v. City of Dacono, Colorado* (D.C. Colo. 1983), 574 F. Supp. 130.) The Supreme Court has held that strict scrutiny is appropriate for classifications based upon "immutable characteristics determined solely by accident of birth" such as sex, race, and national origin because these classes have been historically discriminated against politically. (See *Frontiero v. Richardson* (1973), 411 U.S. 677, 685, 36 L. Ed. 2d 583, 591, 93 S. Ct. 1764, 1769.) While it is true that juveniles are not entitled to vote, they have not been historically discriminated against and age is clearly not an immutable characteristic. Thus, this court's prior holdings that the rational basis standard is applicable to juveniles comports with decisions of the United States Supreme Court. See *In re Sekeres* (1971), 48 Ill. 2d 431.

In *People v. J.S.* (1984), 103 Ill. 2d 395, this court upheld the validity of section 2—6 as it read before the 1985 amendment, and it is only the provision added by that amendment that is under consideration in this case. In *People v. J.S.*, this court applied the rational basis test, which we have indicated above is applicable here. Also in *People v. J.S.*, the defendants argued, as does

the defendant in this case, that the classification of the crimes was arbitrary. In *People v. J.S.*, this court held that the inclusion of murder, rape, deviate sexual assault, and armed robbery with a firearm—to the exclusion of other Class X felonies—in the class of cases in which minor defendants over 15 years of age would be prosecuted under the Criminal Code of 1961, and not the Juvenile Court Act, was a rational classification.

The defendant here also asserts that even under the rational basis test the classification is unconstitutional because the legislature has arbitrarily denied the defendant a benefit (treatment under the Juvenile Court Act) which is granted to others who are similarly situated. Specifically, the defendant argues that a juvenile who is charged with unlawful use of weapons on school grounds commits intrinsically the same quality of offense whether he is on school grounds or at a park district playground. Although the defendant acknowledges that the legislature has the authority to define the limits of juvenile court jurisdiction, he asserts that the distinction which is drawn in section 2—7(6)(a) of the Juvenile Court Act, which includes unlawful use of weapons on school grounds, but not other similar offenses in the class of cases in which a minor defendant shall be prosecuted under the Criminal Code, is arbitrary. We do not agree.

The juvenile court system was created by the legislature. "Nowhere in the Federal or in this State's constitution is there found the right to be treated as a juvenile for jurisdictional purposes." (*People v. J.S.* (1984), 103 Ill. 2d 395, 402.) In determining whether the classification violates the equal protection clause, it must be noted that the classification is presumed valid and that the party challenging the classification has the burden of showing invalidity. (*People v. McCabe* (1971), 49 Ill. 2d 338, 340.) The classification will not be set aside as a denial of equal protection if facts reasonably may be con-

ceived to justify it. (*Begich v. Industrial Comm'n* (1969), 42 Ill. 2d 32, 36.) "Whether the enactment is wise or unwise; *** whether it is the best means to achieve the desired results, and whether the legislative discretion within its prescribed limits should be exercised in a particular manner are matters for the judgment of the legislature, and the honest conflict of serious opinion does not suffice to bring them·within the range of judicial cognizance." (*Thillens, Inc. v. Morey* (1957), 11 Ill. 2d 579, 593.) Thus we must be concerned with the purpose of the classification and whether a rational basis exists to justify the classification. *McCabe*, 49 Ill. 2d at 341.

The State asserts that the legislature has drawn a rational distinction because the presence of weapons on school grounds could lead to a series of other crimes. Comments by the sponsor of the Act indicate that the provision concerning unlawful use of weapons on school grounds was designed to remedy perceived problems that occur in and around school buildings and property:

> "[This Act] creates the safe school zones in and around school property and deals severely with the bringing of firearms, the selling of *** hard drugs in and around schools. It deals with adults trying to recruit juveniles into *** gangs. This is a *** result of hearings over six months in schools throughout the State of Illinois, we've seen statistics about the dropout rate and surveys *** [indicate] that the major reason for the dropout rate has been gangs. This is·our message to those gangs that we're not going to tolerate drugs, firearms, gang recruitment in and around the schools ***." (84th Ill. Gen. Assem., Senate Proceedings, July 1, 1985, at 40 (statements of Senator Marovitz).)

It is true, as defendant maintains, that juveniles charged with unlawful use of weapons on school grounds commit intrinsically the same offense whether they are on school grounds or not. However, the legislature could have rationally concluded that deterring juveniles from carrying

weapons on school grounds is more important because attendance at school is compulsory and therefore the State has a duty to create a safe environment.

Moreover, this court has upheld classifications against equal protection challenges when the situs of the crime warranted a stricter penalty. (*People v. Bales* (1985), 108 Ill. 2d 182.) In *Bales* this court held that there was a rational basis for classifying residential burglary as a Class 1 felony and burglary as a Class 2 felony. (108 Ill. 2d at 192.) This court stated that there was a rational basis for the classification because "residential burglary contains more possibility for danger and serious harm than that of places not used as dwellings." (*Bales*, 108 Ill. 2d at 193, quoting *People v. Gomez* (1983), 120 Ill. App. 3d 545, 549.) Similarly, in this case the legislature could have rationally concluded that the unlawful use of weapons on school grounds poses a greater chance of injury and danger to persons in the school environment than elsewhere.

Additionally, the defendant contends that automatically transferring juveniles charged with unlawful use of weapons on school grounds is arbitrary because more serious crimes with a closer nexus to gang activity are not included in the automatic-transfer statute when committed on school grounds. (See, *e.g.*, Ill. Rev. Stat. 1985, ch. 38, par. 12—6 (intimidation); Ill. Rev. Stat. 1985, ch. 38, par. 12—6.1 (compelling membership in a gang).) "[A] classification which has some reasonable basis is not unconstitutional because it is not made with mathematical nicety or because in practice it results in some inequality." (*City of Chicago v. Vokes* (1963), 28 Ill. 2d 475, 480.) Moreover, Public Act 84—1075 created and amended numerous pieces of legislation in addition to adding the offense of unlawful use of weapons on school grounds to those offenses required to be automatically transferred to criminal court. For example, the Act enhanced the

penalty for "compelling organization membership of persons" into gangs from a Class 3 to a Class 2 felony. (Ill. Rev. Stat. 1985, ch. 38, par. 12—6.1.) The Illinois Controlled Substances Act was also amended to increase the penalty for violations if the offense took place on or around school grounds. (Ill. Rev. Stat. 1985, ch. 56½, par. 1407.) Thus, even if the classification results in some inequality, it is not unconstitutional because it was rational for the legislature to conclude that juveniles that are charged with unlawful use of weapons on school grounds posed the greatest threat to the school environment. See *People v. J.S.* (1984), 103 Ill. 2d 395, 403.

The defendant next contends that automatically transferring juveniles charged with unlawful use of weapons on school grounds violates due process. Because a transfer from juvenile to criminal court creates the possibility that the child will be deprived of liberty for a longer period of time and under more punitive conditions, it must comport with due process. (*In re Gault* (1967), 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428.) Our analysis of whether the statute violates the due process clause must begin, as did our equal protection analysis, with the presumption that the statute is valid. Similarly, the burden of showing the statute is invalid is on the defendant. *People v. Bales* (1985), 108 Ill. 2d 182.

Generally, the legislature has wide discretion to prescribe penalties for defined offenses. (*People v. Bradley* (1980), 79 Ill. 2d 410, 417.) However, the legislature's power to fix penalties is subject to the constitutional limitation which prohibits the deprivation of liberty without due process of law. (*Bradley*, 79 Ill. 2d 410; *Heimgaertner v. Benjamin Electric Manufacturing Co.* (1955), 6 Ill. 2d 152.)

"We have consistently stated that the standard of a proper exercise of the police power is whether the statute is reasonably designed to remedy the evils which the leg-

islature has determined to be a threat to the public health, safety and general welfare." (*Heimgaertner*, 6 Ill. 2d at 159.)

Thus, the test focuses on the purpose of the statute and the problem the legislature was attempting to alleviate thereby.

The defendant maintains that the legislature has acted arbitrarily and irrationally in mandating the adult prosecution of juveniles charged with unlawful use of weapons on school grounds, a Class 4 felony, while providing that minors charged with more serious crimes retain the benefits of the Juvenile Court Act. Additionally, the defendant asserts that the purpose of automatically transferring juveniles charged with unlawful use of weapons on school grounds was to root out the evil of gangs in Illinois schools. Accordingly, the defendant contends that the statute is irrational because minors charged with crimes more serious and directly related to gang activity retain the protections of the Juvenile Court Act. See, *e.g.*, Ill. Rev. Stat. 1985, ch. 38, par. 12—6 (intimidation); Ill. Rev. Stat. 1985, ch. 38, par. 12—6.1 (compelling organization membership).

In support of his substantive due process contention, defendant relies on *People v. Bradley* (1980), 79 Ill. 2d 410. *Bradley* involved the validity of the penalty for possession of a controlled substance, which was higher than that for delivery of the same substance. This court noted that the purpose of the Illinois Controlled Substances Act was to penalize more severely those engaged in the traffic of the substances than the occasional user. This court in *Bradley* concluded that the statute violated due process because it imposed a greater sentence for possession than for delivery, which was in contravention of the express intent of the legislature. 79 Ill. 2d at 418.

We do not agree with defendant's assertion that the legislature has acted arbitrarily and irrationally. As was

previously noted, the purpose of the Act was to reduce crime in schools and lessen gang activity. The fact that the offense of compelling organization membership of persons is not subject to automatic transfer is not dispositive of defendant's due process claim. The legislature chose to attack the gang-crime situation in a variety of ways, and automatically transferring juveniles charged with unlawful use of weapons on school grounds was but one of the methods chosen. This court has stated that:

> "The reasonableness of a police regulation is not necessarily what is best but what is fairly appropriate under all circumstances ***." *City of Chicago v. Vokes* (1963), 28 Ill. 2d 475, 479-80.

Finally, it should be noted that, unlike *Bradley*, providing that juveniles charged with the unlawful use of weapons on school grounds be criminally prosecuted is not in contravention to the express legislative intent. Thus, the legislature could have rationally concluded that unlawful use of weapons on school grounds is unique in being a catalyst for other, more serious offenses and therefore there is a greater need to deter such activity.

The differences in treatment created by the statute in question is not in the penalty provided for different offenses, as was the case in *People v. Bradley*. A minor confined under the Juvenile Court Act by order of the court may be confined just as long, and possibly longer, than a person sentenced under the Criminal Code. It is the method of treatment that differs under the two procedures. Because of this difference, a finding of delinquency and disposition under the Juvenile Court Act does not have the same effect insofar as creating a criminal record is concerned. There is a different effect from a juvenile disposition insofar as subsequent criminal convictions are concerned than there is if the defendant is prosecuted criminally and convicted. It has been argued in this court, and not seriously contested, that because of

the differences in the resulting criminal record created by treatment under the two statutes, juveniles are often recruited as "gunmen" by adult gang members and recruiters. Therefore, in the particular area covered by this statute the legislature may have felt it advisable to remove the cloak of protection afforded by treatment under the Juvenile Court Act. The legislature was addressing a series of problems involving the school environment. Whether these problems could have been more effectively dealt with in a different manner is not for this court to say.

We hold that section 2—7(6)(a) of the Juvenile Court Act, requiring minors charged with unlawful use of weapons on school grounds to be prosecuted as adults, does not deprive minors of due process or equal protection of the law.

We reverse the judgment of the circuit court of Cook County and remand this case to that court for further proceeding.

*Reversed and remanded.*

JUSTICE STAMOS took no part in the consideration or decision of this case.